UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION

DEBRA SILCK,

                               CIVIL COURT CASE NO.:

       Plaintiff,                   19th Judicial Circuit Court Case No.:
v.                                  312019CA000759

TARGET CORPORATION,

       Defendants.

_____/

**<u>DEFENDANT TARGET CORPORATION'S NOTICE OF REMOVAL
AND SUPPORTING MEMORANDUM OF LAW</u>**

Defendant/Petitioner, TARGET CORPORATION ("TARGET") by and through its undersigned counsel and pursuant to 28 U.S.C. §§1332, 1441, 1446, and Fed. R. Civ. P. 81(c), respectfully petitions the Court for Removal of the above-captioned civil action from the Nineteenth Judicial Civil Court in and for Indian River County, Florida to the United States District Court for the Southern District of Florida, Ft. Pierce Division [Exhibit 1: Civil Cover Sheet].  In support thereof, TARGET states as follows:

1.      Plaintiff filed this state court action styled *Debra Silck v. Target Corp.,* Case No.: 312019CA000759, in the Nineteenth Judicial Circuit in and for Indian River County, Florida on September 25, 2019 alleging personal injuries as a result of a fall "when she encountered a rolled curb" as she existed the Vero Beach Target store on December 12, 2018.  TARGET was served with the Complaint on October 2, 2019.  [Ex. 2:  Summons and Complaint: ¶7, 5].

2.      On October 17, 2019, TARGET filed its Answer and Affirmative Defenses in response to Plaintiff's Complaint. [Ex. 3 Target Answer].

3.      Plaintiff, DEBRA SILCK ('SILCK"), is a resident of Indian River County, Florida and is deemed a citizen of the state of Florida. [Ex. 2: ¶2]

4.     TARGET is a foreign corporation incorporated in the state of Minnesota with its principle place of business in Minnesota.  TARGET is a citizen of the state of Minnesota [Ex. 4: Target Annual Report].

5.     In support of her claim, SILCK'S Complaint asserts as follows:

Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition.  The losses are permanent and continuing, and Plaintiff will suffer the losses in the future. [Ex.2: ¶11]

6.     SILCK'S Complaint seeks damages in excess of Fifteen Thousand Dollars ($15,000.00).

7.     After lawsuit was filed, TARGET directed written discovery to SILCK by way of Request for Admissions, Interrogatories, and Request for Production.

8.     In an effort to confirm the "amount in controversy" herein, TARGET propounded a Request for Admissions to SILCK on October 25, 2019 asking her to specifically admit/deny that she will/will not stipulate that she seeks damages in excess of/less than $75,000.00 and to admit/deny that her total damages, including past medical bills, future medical treatment, past pain and suffering, and future pain and suffering, exceed $75,000.00.  SILCK responded by claiming "Plaintiff has made a reasonable inquiry and the information known or readily obtainable by her is insufficient to enable her to admit or deny." Although SILCK admitted she directed a pre-suit settlement demand to Sedgwick on behalf TARGET seeking $150,000.00 in damages related to her fall at Target, she refused to unequivocally admit or deny that she was seeking $150,000.00 or more than $150,000.00 as compensation for the damages she sustained as a result of her fall. Rather, SILCK responded by claiming "Plaintiff has made a reasonable inquiry and the information known

or readily obtainable by her is insufficient to enable her to admit or deny." [Ex. 5:  SLICK'S Resp. to TARGET'S Request for Admission]

9.     On November 25, 2019, SILCK served her Responses to TARGET'S Interrogatories and Request for Production.  SILCK described in detail how the incident occurred averring as follows [Ex. 6: SILCK'S Interrog. Resp. No. 7]:

> I made a purchase and exited the store.  While walking toward my vehicle, I stepped on an oddly constructed sidewalk with an unexpected change of elevation which caused me to fall.

10.     TARGET'S Interrogatory Number 8 asked SILCK to describe in detail each act or omission on the part of any party to this lawsuit that she contends constituted negligence.  In response SILCK averred as follows: [Ex. 6: No. 8]:

> The Defendant's pedestrian route for access/egress contains a rolled curb with excessive sloping.  The curb creates a dangerous walking condition.  The Defendant failed to warn of the dangerous condition.  Discovery is ongoing.

11.     In her sworn Interrogatory Responses, SILCK describes her injuries caused by the incident at Target as follows [Ex. 6: No. 10]:

> Rib contusions, left wrist fracture, right ankle fracture.  See medical records for additional details.  Treatment is ongoing.

12.     Per her Response to Interrogatory Number 11, SILCK was required to rent a mobility scooter due to the injuries she relates to her fall at Target. [Ex. 6: No.11]

13.     On November 25, 2019, SILCK served her Responses to TARGET'S Request for Production. [Ex. 7: Plt's Response to Request for Production].  Therein, she produced numerous medical records delineating the medical treatment she received to date.

14.     A summary of SILCK'S medical conditions and the treatment she has received as documented in her medical records in response to discovery is as follows:

- On December 12, 2018, SILCK presented to the emergency department at Indian River Hospital and reported injuries resulting from a trip and fall on a curb in a parking lot. SILCK complained of sharp, severe ankle pain 8/10, left hand pain, and head pain; she was unable to bear weight on her leg. SILCK reported falling onto her left side, striking her head, and hitting the left side of her face. A right ankle xray revealed an acute traumatic fracture of the distal fibula.
- On December 13, 2018, SILCK was evaluated by orthopedic physician Dr. Steinfeld for complaints of aching left hand/wrist pain associated with swelling and severe, sharp, stabbing right ankle pain. Xrays revealed an avulsion fracture of SILCK'S right ankle and a fracture to the fourth metacarpal of her left hand. SILCK further reported muscle aches, weakness, arthralgias/joint pain, and back pain. SILCK was fitted for a cam walker boot and a left wrist cock-up splint; she was provided prescriptions for medications to manage her pain and symptoms. Durable medical equipment including a knee scooter was ordered to assist SILCK with mobility.
- At her January 3, 2019 visit with Dr. Steinfeld, SILCK complained of continued pain to her wrist and ankle and advised she was now using a wheelchair. SILCK'S continued to report complaints of muscle aches, weakness, arthralgias/joint pain, and back pain. SILCK was provided a prescription for Tramadol to manage her pain and advised to start physical therapy.
- SILCK followed-up with Dr. Steinfeld at regularly scheduled office visits. At her February 25, 2019 visit, SILCK reported aching, severe right ankle pain which was aggravated by walking, back pain, and tenderness to her left wrist. SILCK wore an air cast to her ankle.
- At her March 7, 2019 visit with Dr. Steinfeld, SILCK ambulated with an aircast applied to her ankle, she complained of continued severe, aching right ankle pain and she was advised to resume physical therapy to continue rehabilitation of her ankle injury.
- At her March 20, 2019 physical therapy evaluation, SILCK complained of sharp right ankle pain since December 2018 associated with weakness; SILCK had stopped her activities, hobbies and exercise due to pain. SILCK ambulated with an antalgic gait. SILCK attended a structured course of physical therapy program with sessions recommended twice weekly for up to six weeks.
- At her April 17, 2019 therapy session, SILCK reported moderate difficulty with housework, getting out of the bath, walking, lifting a bag of groceries from the floor, performing light as well as heavy activities around the house, and standing or sitting up to an hour.

[Ex. 8: Medical Records[1]]

15.     To back up her injuries and the extent of her medical conditions, SILCK produced

16 photographs depicting her injuries, her left wrist donned in a brace, her right foot/leg supported

in a walking book, and her use of a wheelchair as an assistive device. [Ex.9: Photos]

---

[1] SILCK'S full medical records have not been included as an exhibit to this Removal Petition to protect her privacy. An unredacted copy of the records and health care liens are available for the Court upon request.

16.     On March 4, 2020, SILCK testified that in November 2019 she fell and hurt her back [Ex.10: Slick. Depo: P31, L17-25].  SILCK does not know what caused her fall as she just fell. [Ex.10: P32, L23-24; P33, L6].  Since her fall at Target, SLICK'S right foot "still bothers and hurts her." SLICK'S "stride of walking has changed and its difficult to determine why."  [Ex.10: P37, 17-25; P38, L1-7]

17.     In response to Request for Production Number 32, SILCK produced health insurance liens from Blue Cross and Blue Shield of Massachusetts (BCBS) and CMS/Medicare "relating to medical treatment she received as a result of the incident described in Plaintiff's Complaint."  Per BCBS, SLICK'S medical charges and benefits are "subject to change." [Ex.7: Redacted BCBS and Medicare lien produced by Plt. on 11/25/2019 in Response to RFP].  On June 22, 2020, Counsel's law firm provided an updated BCBS and CMS/Medicare lien to Undersigned disclosing medical billing of $63,659.31 related to SILCK'S December 12, 2018 fall at Target.  Per the Procedure Code identified in BCBS billing documentation, SILCK underwent vertebral surgery at Vero Surgery Center on December 20, 2019. [Ex. 11: Redacted updated BCBS and Medicare lien provided by Plt. on 06/22/2020.]

18.     Along with her medical records, billing documentation with charges to date totaling $63,659.31, and the 16 photographs depicting SLICK'S injuries, her wrist secured in a brace, her ankle and leg supported by an orthopedic boot, and her use of a wheelchair, in Response to TARGET'S Request for Production, SLICK also produced the five page detailed report of Building Inspector and Plans Examiner Christopher Zimmerman who "examined the accident site as to the liability of the owner and has evaluated the applicable Building Code and norms of good construction and maintenance."   Inspector Zimmerman's opinions and report is supported by 59 photographs of the subject rolled curb several of which depict a leveler and measuring device,

detailed hand-written notes, Property Appraisal information, construction/site plans, and provisions of the Florida Building Code 2001 edition.  Based thereon, Inspector Zimmer has opined that "the rolled curb created a dangerous walking condition that was not made readily apparent to SILCK, the curbing did not contain any definitive edge or any warnings of the excessive slope along her travel path which resulted in SLICK'S fall and serious injury." [Ex.12: Zimmerman Report without attachments].

19.     "The amount of damages suffered by a plaintiff in a personal injury case are uniquely within the knowledge of the claimant." *Sunrise Mills Limited Partnership v. Adams*, 688 So.2d 464 (Fla. 4th DCA 1997).  Although SILCK contends the quantum of her damages is "premature," the medical records and billing documents she has produced, the nature of her claimed injuries, and the report of Building Inspector Zimmerman demonstrate that SILCK and counsel have evaluated "TARGET'S liability," the extent of SILCK'S claimed injuries, her medical treatment, and resulting pain and suffering.  Consistent with *Sunrise Mills*, SILCK'S Complaint alleges that her damages exceed $15,000.00; she has also produced billing charges related to the December 12, 2018 incident totaling $63,659.31.  Unquestionably, SILCK has a reasonable basis to determine the amount in controversy herein.  "A plaintiff's refusal to stipulate or admit that she is not seeking damages in excess of the requisite amount should be considered when assessing the amount in controversy." *White v. PDB State Farm Mut. Auto. Ins. Co.*, 2013 WL 6061890, (M.D. Fla. 2013), *see also Green v. Wal-Mart Stores*, 2014 WL 6792043, (N.D. Ala. 2014).  SILCK'S equivocal and evasive Response to TARGET'S RFA is evidence in itself that the amount in controversy herein exceeds $75,000.00.  *See:  PDB State Farm.*

20.     SILCK'S Complaint seeks damages in an amount in excess of $15,000.00.  The Complaint further alleges that SILCK seeks damages for aggravation of a pre-existing condition,

pain, suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment.  SILCK alleges that all of her injuries are permanent and/or continuing and that she will suffer from those losses in the future.

21.     TARGET'S Notice of Removal has been filed within thirty (30) days of receipt of SLICK'S BCBS and CMS/Medicare health liens pursuant to the "other paper provision" of 28 U.S.C. §1446.

22.     Venue is proper in the Fort Pierce Division of this Court pursuant to 28 U.S.C. §1446 as the State Court Action originated in this venue.

23.     Copies of all process, pleadings and Orders served on the defendant in the State Court Action are attached hereto as composite Exhibit 13 and therefore, are filed with this Court pursuant to U.S.C. §1446(a).

24.     TARGET has paid the removal fee contemporaneously with the filing of this Notice of Removal.

25.     Pursuant to 28 U.S.C. §1446(d), TARGET has provided a written notice of this Notice of Removal to Plaintiff's counsel and has filed a Notice of Filing of this Notice of Removal with the State Court.  A true copy of TARGET'S Notice of Filing of the Notice of Removal is attached as Exhibit 14.

## **MEMORANDUM OF LAW**

26.     Removal of this action is based on diversity jurisdiction pursuant to 28 U.S.C. §1332, as complete diversity exists between the identified parties and the amount in controversy exceeds the statutorily mandated threshold of $75,000.00.  Accordingly, this action is ripe for removal to this Court pursuant to 28 U.S.C. §1441 (a) and (b).

27.     As a predicate for removal, a removing defendant must demonstrate that the District Court has original jurisdiction of the action pending in state court. *Leonard v. Kern,* 651 F. Supp. 263 (S.D. Fla. 1986). The burden is on the party requesting removal to federal court to show that it has met all of the applicable statutory requirements. *Wright v. Continental Casualty Company,* 456 F. Sup. 1075, 1078 (N.D. Fla. 1978). A defendant may introduce its own affidavits, declarations or other documentation to meet its burden. *Pretka v. Kolter City Plaza II, Inc.,* 608 F. 3d 744 (11th Cir. 2010). In this Removal Petition, TARGET has met its burden and has fully complied with the statutory requirements for removal to federal court.

28.     Diversity jurisdiction exists pursuant to 28 U.S.C. §1332, where there is complete diversity among the identified parties. *Strawbridge v. Curtis*, 7 U.S. 267 (1806). SILCK is a citizen of Indian River County, Florida. TARGET is a foreign corporation incorporated in the State of Minnesota with its principle place of business in Minnesota. TARGET is a citizen of the state of Minnesota. Therefore, this is an action between citizens of different states.

29.     To meet its burden as to the amount in controversy, TARGET relies upon SILCK'S Complaint, SILCK'S equivocal and evasive Responses to TARGET'S Request for Admissions, SLICK'S Interrogatory Responses, SILCK'S Responses to Request for Production including over 150 pages of medical records, 16 photographs which depict her injuries, SLICK'S wrist encased in a brace, her ankle and leg supported with in an orthopedic boot, and her use of a wheelchair, billing documentation and expenses totaling $63,659.31, and the thorough and detailed liability analysis and report of Inspector Zimmerman.

30.     SILCK alleges that TARGET is responsible for her personal injuries and seeks damages arising from the December 12, 2018 incident. In her Interrogatory Responses, SILCK identifies some of the medical providers who have treated her for the injuries which she relates to

the fall at Target.  SILCK has produced numerous pages of medical records (along with color photographs) which delineate the medical treatment she has received, the extent of her injuries and the claimed severity of her complaints and permanent conditions.  Per the medical records, SILCK was treated in the emergency department at Indian River Medical Center after the fall occurred, diagnostic imaging confirmed fractures to her right ankle and wrist, and she has undergone vertebral surgery.  In spite of undergoing weeks of conservative therapy consisting of physical therapy, bracing, and medications, SILCK continued to be symptomatic, endure severe pain, and her activities are limited by her injuries.

31.    In addition to the foregoing, SILCK seeks damages for aggravation of pre-existing injuries, pain, suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment.  SILCK alleges that all of her injuries are permanent and/or continuing and that she will suffer from those losses in the future.

32.    In evaluating the amount in controversy for purposes of jurisdiction, what is actually recoverable is irrelevant; instead, it is the amount Plaintiff is seeking, and therefore putting in controversy, that is determinative.  *Mullen v. GE*, 2013 U.S. Dist. LEXIS 19676 (M.D. Fla. 2013).  "The pertinent question is what is in controversy in the case, not how much the plaintiff is ultimately likely to recover."  *Id.* (emphasis contained within body of opinion).

33.    In *Mullen v. GE*, 2013 U.S. Dist. LEXIS 19676 (M.D. Fla. 2013), Mullen filed her state court action seeking to recover damages "in excess of $15,000.00" from a slip and fall on ice which unexpectedly came from a refrigerator.  GE timely removed the case to federal court relying upon the allegations in the Complaint and a pre-suit demand letter which revealed medical expenses of $54,824.41.  Mullen filed a Remand Motion asserting as grounds therefore that her recoverable medical bills would be reduced to the amounts paid by Medicare (to a sum

less than which was less than $75,000.00); and his demand did not include a specific amount to resolve the case.  In denying the Remand Motion, Judge Howard held that "for purposes of jurisdiction, what is actually recoverable is irrelevant; instead, it is the amount Plaintiff is seeking and therefore is putting in controversy, that is determinative." In addition to the claimed medical expenses, the extent of Mullen's injuries and the details of the medical treatment he received, Mullen claimed that his injuries were permanent and his Complaint sought recovery for pain and suffering, disability, loss of earnings, loss of ability to earn money and loss of capacity for enjoyment of live.  The Complaint further asserted Mullen would continue to suffer such losses in the future.  Finding the amount in controversy to be in excess of $75,000.00, Judge Howard affirmed that "the plaintiff's likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is <u>in controversy</u> in the case, not how much the plaintiff is ultimately likely to recover."  *Mullen* (emphasis contained within body of opinion), quoting *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009).

34.     SILCK seeks damages in excess of $15,000.00 and her past medical bills total at least $63,659.31.  As in *Mullen*, SILCK'S past medical bills are not the only source of her claimed damages.  Based upon the allegations set forth in SILCK'S Complaint, her discovery responses, the details of her medical care and treatment and the diagnoses outlining the extent of her injuries, coupled with her claim for damages for pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, all of which SILCK claims are permanent or continuing in nature and will continue in the future, the amount in controversy exceeds $75,000.00.

35.     Where, as here, SLICK has not pleaded a specific amount in damages in her Complaint, TARGET must prove by "a preponderance of the evidence that the amount in

controversy more likely than not exceeds the $75,000 jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F. 3d 1353, 1357 (11th Cir. 1996).   A removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.   *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010).   A defendant's removal petition need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions nor prove the amount.   *See: Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. St. 547 (2014); *Schaefer v. Seattle Service Bureau, Inc*., 2015 WL 6746614, (M.D. Fla. 2015).   District courts are permitted to make reasonable deductions, reasonable inferences, and other reasonable extrapolations from the documents submitted in support of the removal and the Court may use its judicial experience and common sense in determining if a case meets the federal jurisdiction requirements. *See Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010).   The removal evidence herein demonstrates by a preponderance of the evidence that TARGET has met its burden as the amount-in-controversy in this matter exceeds the $75,000.00 threshold for invoking federal jurisdiction.

## CONCLUSION

36.    This action is removable to federal court pursuant to 28 U.S.C. §1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the $75,000.00 threshold for federal jurisdiction.   TARGET has met its burden to support removal, and this Court has original jurisdiction over the action.

WHEREFORE, Defendant/Petitioner, TARGET CORPORATION, respectfully requests that this action should be removed to this Honorable Court, that this Court assume full

jurisdiction over the cause as provided by law, and that the Court should grant such further relief which is deemed just and appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the <u>16</u><sup>th</sup> day of July, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

DERREVERE STEVENS BLACK & COZAD
2005 Vista Parkway, Suite 210
West Palm Beach, Florida  33411
Telephone: (561) 684-3222
Facsimile:  (561) 640-3050
Email:  jdd@derreverelaw.com

BY: _/s/ Jon D. Derrevere_____
JON D. DERREVERE, ESQUIRE
Florida Bar No: 0330132

## SERVICE LIST

**DEBRA SILCK versus Target Corporation**

**United States District Court, Southern District of Florida**

Jon D. Derrevere, Esquire
E-mail: jdd@derreverelaw.com
Derrevere Stevens Black & Cozad
2005 Vista Parkway, Suite 210
West Palm Beach, FL 33411
Phone: (561) 684-3222
Facsimile: (561) 640-3050
*Attorney for Defendant,*
*Target Corporation*

Jesse H. Larsen, Esquire
E-mail: jlarsen@verobeachinjurylaw.com
Douglas W. Tuttle, Esquire
E-mail: dtuttle@verobeachinjurylaw.com
Dana C. Larsen, Esquire
E-mail: dlarsen@verobeachinjurylaw.com
Tuttle Law P.A.
3617 20th Street
Vero Beach, FL 32960
Telephone (772) 563-0032
*Attorney for Plaintiff, Debra Silck*